UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRANDON CAIN,

        Plaintiff,

v.

CARMEN PALMER et al.,

        Defendants.
_____/

Case No. 1:19-cv-628

Honorable Janet T. Neff

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

    **I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan. The events about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia, Michigan.

Plaintiff sues the following individuals who were employed by the MDOC at RMI: Warden Carmen Palmer and Deputy Warden Gregory Skipper.[1]

Plaintiff alleges that in July 2016 he became the Housing Unit Block Representative for the Warden's Forum. From July 2016 to September 2016, there were a number of gang fights at RMI, resulting in several "lock downs" at the facility. (Compl., ECF No. 1, PageID.6.) During each lock down, prisoners were not allowed to use the law library. Plaintiff repeatedly told his Assistant Residential Unit Supervisor (ARUS) that the lock downs should not include the law library, because closing the library made it more difficult for prisoners who were not involved in the gang fights to conduct research.

On August 30, 2016, Plaintiff filed a grievance about the closures of the law library. When Plaintiff attended the September meeting of the Warden's Forum, he raised the fact that "constant closure" of the law library was having an impact on prisoners like Plaintiff, who were "ineligible for legal assistance." (*Id.*, PageID.7.) After this meeting, Defendant Skipper pulled Plaintiff aside and told him that he would no longer be allowed to attend the Warden's Forum meetings because his actions and complaints were "attempts to incite other inmates." (*Id.*)

A few days later, Plaintiff's ARUS approached Plaintiff and told him that "Palmer and Skipper are beginning to complain about you since you can't stop it with the grievances. They're gonna put you on that bus." (*Id.*) Plaintiff responded that he had been a "model inmate" at RMI with no misconduct tickets, and that he would continue to file grievances. (*Id.*)

On September 16, a unit officer told Plaintiff to pack up his belongings. The officer told him that prison staff were giving him an "emergency ride-out" due to "all those damn

---

[1] According to the MDOC's website, Skipper has taken over the role of Warden at RMI. *See* https://www michigan.gov/corrections/0,4551,7-119-68854_1381_1385-5369--,00 html (visited August 12, 2019).

grievances and complaining you doing." (*Id.*, PageID.8.) Apparently, Plaintiff transferred to St Louis Correctional Facility (SLF) that same day.

On September 19, Plaintiff inquired about the status of his property. The property officer at SLF told Plaintiff that prison staff at RMI were holding Plaintiff's property. Plaintiff subsequently filed a grievance against Defendants for their alleged "retaliatory transfer." (*Id.*)

Plaintiff finally received his property two and a half weeks after his transfer. For that entire time, he was deprived of access to his food, soap, toothpaste, and legal materials. When Plaintiff inspected his property, he discovered a response to one of his grievances about the law library. Plaintiff alleges that, due to the delay in receiving the response, the deadline for appealing to step II of the grievance process had passed. Nevertheless, Plaintiff attempted to send an appeal to RMI. He also attempted to obtain the identification number for his grievance about the prison transfer.

By October 10, 2016, Plaintiff had not received a response to his grievance appeal or to his request for an identification number, so he sent a letter to RMI asking for a step III appeal form and inquiring about the status of his transfer grievance. He received no response to his letter.

On October 19, Plaintiff attempted to follow up on his grievances through the grievance coordinator at SLF. The grievance coordinator told him to continue writing RMI.

On October 24, Plaintiff filed a new grievance, this time against the grievance coordinator at RMI, for failing to process the grievance about his allegedly retaliatory transfer. Plaintiff did not receive a response.

Plaintiff contends that as a result of the transfer, he lost his job as a unit porter and was deprived of his personal property for over two weeks. Consequently, he did not have access to his toothpaste, soap, toothbrush, and legal materials. When Plaintiff requested hygiene products

3

from prison staff at SLF, he was told that he would have to purchase them because he was not classified as indigent.

Plaintiff claims that Defendants transferred him in retaliation for complaining about the closures of the law library, in violation of his rights under the First Amendment.

As relief Plaintiff seeks the following: a declaratory judgment; an injunction ordering Defendants to refrain from retaliating against or harassing any other "block reps" or prisoners who try to attend the law library; and compensatory and punitive damages. (*Id.*, PageID.13.)

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants retaliated against him for complaining about conditions at RMI by transferring him to another prison. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's claim fails at the second step because he does not allege an adverse action. To determine whether an action is adverse, the relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

A transfer from one prison facility to another generally does not qualify as an adverse action. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005); *see also LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) ("As a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse."); *Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted).

If, however, a foreseeable consequence of a transfer would be to inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an adverse action where the transfer resulted in the plaintiff losing a high paying job that helped him pay for his lawyer fees and moved him further from his attorney). In addition, a transfer to a more restrictive environment can be an adverse action. *See Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (holding that transfer to administrative segregation or to another prison's lock-down unit or can be an adverse action).

Plaintiff does not allege that his conditions at SLF were more restrictive or that the transfer to SLF impaired his ability to access the courts. He alleges that he lost a prison job as a result of his transfer, but he does not allege that he needed this job to pay an attorney, as in *Siggers-El*. *See Siggers-El*, 412 F.3d at 702. This case is similar to *Johnson v. Hoffner*, No. 17-2102, 2018 WL 4488737 (6th Cir. Apr. 20, 2018), in which the Court of Appeals held that the plaintiff's loss of a high paying job did not make his transfer an adverse action because the plaintiff did not contend that he needed his job to pay an attorney or that his attorney would be unable to visit him. *Id.* at *3; *see also King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005) (transfer not an adverse action where the transfer "did not deprive [the plaintiff] of access to an attorney or deprive him from prison employment that allowed [the plaintiff] to pay for an attorney"). If the loss of a high paying prison job as a result of a prison transfer is not sufficiently adverse to give rise to a retaliation claim, then the same holds true for the transfer-related job loss alleged by Plaintiff.

Plaintiff also contends that he could not access his property, including his hygiene products and legal materials, for a little over two weeks. This consequence does not meet the threshold for an adverse action. Indeed, as to his hygiene, Plaintiff simply states that prison staff at SLF told Plaintiff that he would have to purchase his own hygiene products. He does not allege that he could not purchase them or reapply for indigent status.

As to Plaintiff's legal materials, the fact that Plaintiff did not receive a copy of the denial of his step I grievance for a few days did not have any adverse effect. It did not impact his ability to pursue that grievance to the next step of the process. The deadline for filing a step II grievance is 10 business days from the date a prisoner *receives* the step I response "or, if no response was received, within ten business days after the date the response was due[.]" MDOC Policy Directive 03.02.130 ¶ BB (effective July 9, 2007). The prison's response to a step I

grievance is "due" within 15 business days after its receipt from the prisoner. *Id.* ¶ X. Thus, Plaintiff could have filed a step II grievance after he *actually* received the response, or he could have filed one within 10 business days after he was supposed to receive the response. The delay in receipt of the step I response could not have prevented him from filing a timely step II grievance.

Furthermore, even if delayed receipt of the grievance response impacted Plaintiff's ability to pursue an issue through the grievance process, that delay could not have stopped Plaintiff from obtaining relief in court for any claims raised in his grievances. If prison officials improperly prevented Plaintiff from pursuing his claims through the grievance process, then the process was not "available" to him, and exhaustion of that process was not a necessary prerequisite for bringing a civil rights claim. *See* 42 U.S.C. § 1997e(a) (requiring exhaustion of "available" administrative remedies).

Accordingly, for all the foregoing reasons, Plaintiff fails to state a retaliation claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: August 20, 2019  /s/ Janet T. Neff
Janet T. Neff
United States District Judge