UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON CAIN #490544,

           Plaintiff,                                 Hon. Janet T. Neff

v.                                            Case No. 1:19-cv-628

CARMEN PALMER, et al.,

           Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff, a state prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at Alger Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 against Defendants alleging that they retaliated against him in violation of his First Amendment rights while he was incarcerated at the Michigan Reformatory (RMI). Defendant Palmer (now retired) was the Warden and Defendant Skipper was a Deputy Warden at RMI when the events alleged in this action occurred. In particular, Plaintiff alleges retaliatory acts of transferring him to another facility and depriving him of his personal property, medication, and other items for nearly two weeks in connection with the transfer. Plaintiff seeks injunctive, declaratory, and compensatory relief.

Presently before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 177), and Defendants' Motion for Summary Judgment (ECF No. 177). Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Plaintiff's motion be **DENIED**, that Defendants' motion be **GRANTED**, and that Plaintiff's Verified Second Amended Complaint be **dismissed with prejudice**.

## I.  Background

### A.    Complaint Allegations

Plaintiff alleges the following facts in his Second Amended Verified Complaint, the operative pleading in this action. (ECF No. 110.)

Plaintiff transferred to RMI from Earnest C. Brooks Correctional Facility on February 9, 2016. (ECF No. 182-3.) In September 2016, Plaintiff was a Block Representative on the Warden's Forum for Unit I-4. (ECF No. 110 at PageID.475.) A Block Representative is a voluntary, elected position in which the individual assists prison staff "in identifying and resolving problems which exist in the unit." Mich. Dep't. of Corr. P.D. 04.01.150, ¶¶ B, C. (03/05/07). Block Representatives also participate in the Warden's Forum, a monthly meeting that serves to "assist the Warden in identifying and resolving problems which exist in the general population of the institution." *Id.*, ¶¶ L–P. The Warden may remove a prisoner from his Block Representative position if the prisoner "engages in conduct which . . . jeopardizes the custody, security, or good order of the facility." *Id.*, ¶ I.

In August and September 2016, gang fights at RMI led to a "complete lockdown" of the facility, including "closure of the law library." (ECF No. 110 at PageID.475, 481.) During this time, Plaintiff had two matters pending in the Wayne County Circuit Court, and he filed a grievance concerning lack of access to the law library. In addition, Plaintiff raised the issue on behalf of all prisoners with Defendants at the Warden's Forum. (*Id.* at PageID.476.) Following the September 2016 Warden's Forum session, Defendant Skipper took Plaintiff aside and told him that he would no longer be allowed to attend the Warden's Forum because he considered Plaintiff's complaints "attempts to incite other inmates to file grievances." (*Id.* at PageID.476–77.) A few days later, ARUS Smith told Plaintiff that Defendants Palmer and Skipper were beginning to complain about Plaintiff. ARUS Smith warned Plaintiff, "if you can't stop it with the grievance

and let us run this facility how we see fit, you're gonna be put on a bus." (*Id.* at PageID.477.) A couple of days later, Plaintiff was placed on "an emergency ride-out," causing him to lose his high-paying prison job and his Block Representative position, and RMI kept his personal property for nearly two weeks.[1] (*Id.*) Plaintiff was transferred to St. Louis Correctional Facility (SLF). (*Id.* at PageID.481.)

## B.    Facts from Record Evidence

On August 16, 2016, Plaintiff filed a grievance regarding his need for law library time in order to meet an August 19, 2016 court deadline. (ECF No. 172-1 at PageID.959.) The grievance, which was received at Step I on August 18, 2016, was not directed toward any specified individual. Plaintiff asserted that the filing "deadline will be impossible to meet due to no fault of my own," but instead due to law library time being "cancelled regularly." (*Id.*) Pursuant to RMI Operating Procedure 05.03.115, prisoners are entitled to four hours of law library time per week in segments of no less than one hour. RMI Operating Proc. 05.03.115, ¶ G (02/15/2015). Prisoners who miss a scheduled law library session due to custody and security reasons may request a make-up session by submitting a kite or Call-Out Request Form containing specific information. *Id.*, ¶ H. A prisoner who has pending litigation within 60 days of a deadline may request additional research time by presenting proof of the deadline. *Id.*, ¶ G. Investigation of the grievance revealed that Plaintiff was placed on a call-out for all of the requested law library dates that he submitted; that Plaintiff never

---

[1] Plaintiff's allegations in his second amended verified complaint are internally inconsistent. On the one hand, he alleges that ARUS Smith approached him after the September 2016 Warden's Forum session and threatened that he would be placed on a bus. (ECF No. 110 at PageID.476–77.) But later, in paragraph 24 of his pleading, he alleges that after he filed a grievance, ARUS Smith approached him about "people" being unhappy with his actions and warned him that he might be placed on a bus. He then states that he attended the Warden's Forum session approximately a week or two later and complained about "the constant closure of the law library and the denial of access to the courts," and that subsequently, ARUS Smith approached him and threatened that he would be placed on a bus if he continued his constant complaining. (ECF No. 110 at PageID.481.)

3

submitted a "Deadline Verification" form requesting extra law library time; and that Plaintiff missed 2 hours of library time on August 16 and 17, 2016 due to a facility lockdown but never requested make-up time for those two hours missed. (*Id.* at PageID.961.) Upon receipt of Plaintiff's grievance, Defendant Skipper sent an email to a library technician, stating, "[he] has a deadline, we need to get him over there please." (ECF No. 178-4 at PageID.1075.) Plaintiff was called out to the library for the first available level IV session that day. (ECF No. 172-1 at PageID.960.) Defendant Skipper found no violation of policy. (*Id.* at PageID.961.)

On September 16, 2016, Plaintiff was transferred from RMI to SLF. The reason given for the transfer on Plaintiff's transfer order was "SLF requested trade for prisoner needing OPT. RMI is returning a LIV-GP for bed space."[2] (ECF No. 172-2 at PageID.1015.) B. Hanie from the Correctional Facilities Administration in the MDOC's Central Office in Lansing approved the order. (*Id.*) That day, several prisoners were transferred out of, and several prisoners were transferred into, RMI.[3] (ECF No. 151-3 at PageID.681; ECF No. 153-11 at PageID.813.) The September Warden's Forum was held on September 22, 2016. (ECF 153-4 at PageID.731–32; ECF No. 178-3.) Thus, contrary to Plaintiff's allegation, he could not have attended the September session, as he had already been transferred to SLF.

---

[2] Defendants claim that "OPT" referred to outpatient therapy. (ECF No. 178 at PageID.1046.) Plaintiff says that it referred to outpatient treatment, and that RMI and SLF both have outpatient treatment. (ECF No. 179 at PageID.1112.)

[3] Defendants assert that ECF Nos. 151-3 and 153-11 show that seven prisoners were transferred out of, and seven prisoners were transferred into, RMI. These documents tend to support this assertion. However, Plaintiff contends that ECF No. 151-3 shows that only six prisoners were transferred from RMI to other facilities. He points to the third prisoner in the "Transferred" column, indicating that OOW is not an MDOC facility designation. Instead, he asserts that "OOW" means "out on unit." (ECF No. 179 at PageID.1111.) Plaintiff is correct that OOW is not an MDOC facility designation, but he provides no admissible evidence to explain the meaning of that designation. On the other hand, Defendants failed to respond to Plaintiff's assertion. Nonetheless, it remains undisputed that Plaintiff was not the only prisoner transferred from RMI on September 16, 2016.

Plaintiff alleges that, as a result of the transfer, he lost his high-paying job from which he funded the purchase of legal materials and services, such as paper, pens, carbon paper, printing of cases, and litigation assistance from more advanced pro se prisoner litigants. (ECF No. 110 at PageID.477–78.) He further alleges that he was deprived of his personal property, including personal hygiene products, for almost two weeks. Plaintiff alleges that he was unable to shower, brush his teeth, wash his clothes and his hair, and put on lotion due to lack of access to his property and personal care items. (*Id.* at PageID.478–79.) Plaintiff further claims that he was without his legal materials, medication, and religious materials during this time. (*Id.* at PageID.480–81.)

## II.   Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.   Discussion

Plaintiff alleges that Defendants retaliated against him for exercising his rights under the First Amendment. The requirements for a valid First Amendment retaliation claim are well established. To prove such a claim, a plaintiff must establish that: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As an initial matter, it is necessary to determine the factual allegations at issue because they have evolved over the course of this action. Upon screening Plaintiff's original complaint, the Court dismissed it for failure to state a claim because Plaintiff failed to allege an adverse action. (ECF No. 4 at PageID.50; ECF No. 5.) The Court noted that a transfer to another prison facility generally does not qualify as an adverse action. It observed that a transfer could amount to an adverse action if "a foreseeable consequence of a transfer would be to inhibit a prisoner's ability to access the courts" (ECF No. 4 at PageID.50), but Plaintiff had alleged only the loss of his prison

6

job as a result of the transfer with no adverse impact on his ability to access the courts, such as an inability to pay an attorney handling his case. (*Id.* at PageID.51.) Plaintiff's allegations regarding deprivation of his hygiene products and legal materials were dismissed for similar reasons. (*Id.* at PageID.51.) Subsequently, the Court granted Plaintiff's motion for relief from judgment after Plaintiff filed an amended complaint including additional facts that could render the transfer adverse, such as that he needed his job to pay for legal assistance "from more advanced prisoner pro se litigants" and to pay for legal materials he needed to litigate his two state-court criminal matters. Although the Court was skeptical that Plaintiff was permitted to pay other prisoners for legal assistance, it accepted these allegations as true. (ECF No. 8 at PageID.72.) The Court also found that Plaintiff's additional allegations regarding delayed receipt of his property and medication sufficed to establish an adverse action. (*Id.* at PageID.72.)

In his Second Amended Verified Complaint, Plaintiff continued to maintain that he complained about lack of access to the law library by filing a grievance and by raising the issue at the September Warden's Forum session on behalf of the prisoners he represented. He also alleged that he was transferred to SLF approximately one week after the Warden's Forum. Now, in connection with the instant motions, Plaintiff offers new allegations. First, in support of his motion, he alleges for the first time that his transfer and resulting job loss resulted in additional negative consequences because he had used the funds from his prison job to pay for phone calls to an attorney who provided him legal advice. (ECF No. 172 at PageID.938; ECF No. 173 at PageID.1026.) Second, in opposition to Defendants' motion, Plaintiff concedes that he did not attend the September Warden's Forum, but he asserts that the incidents he alleges in his Second Amended Verified Complaint occurred at, and immediately following, the *August* Warden's Forum. (ECF No. 180 at PageID.1127.) Plaintiff further alleges that within a couple of weeks after

the August Warden's Forum, but before Defendant Skipper denied his Step I grievance on September 12, 2016, he was called to the control center, where he found Defendants waiting for him. Plaintiff claims that when he refused Defendant Skipper's request to sign off on the grievance, Defendants looked at each other, and Defendant Skipper shook his head. (*Id.* at PageID.1129.)

Defendants argue that the Court should ignore Plaintiff's newly-presented allegations because he failed to allege them in his complaint, they contradict his prior verified complaint, and he is simply attempting to amend his complaint in response to their motion for summary judgment. (ECF No. 183 at PageID.1168–69.) As a general rule, a court may not consider facts not alleged in a complaint when ruling on a motion for summary judgment. *Ogletree v. McNamara*, 449 F.2d 93, 99 (6th Cir. 1971); *see also Prim Capital Corp. v. May* (*In re May*), No. 05-10521, 2006 WL 4458360, at *5 (Bankr. N.D. Ohio Aug. 14, 2006) ("Rather than respond to May's arguments set forth in the motion, Prim responded with an entirely new theory of recovery that is based on facts not alleged in the complaint. Therefore, Prim's new theory based on the financial statements is not properly before the Court, and the Court declines to consider it."). Notwithstanding this rule, construing Plaintiff's complaint liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), Plaintiff arguably lays out a timeline that could be construed as referring to the August, rather than the September, Warden's Forum session. (ECF No. 110 at PageID.481 (filed his grievance in August, Defendant Smith then approached him and said that his grievances and complaints were making people unhappy and could result in Plaintiff being put on a bus, and Plaintiff attended the Warden's Forum approximately a week or two later).) As for the remaining new allegations, they appear nowhere in the current operative pleading and will be disregarded. Therefore, the timeline for purposes of the instant motion is that Plaintiff filed a grievance on August 16, 2016, attended the

Warden's Forum later that month (after which Defendant Skipper told him not to return), and was transferred to SLF on September 16, 2016.

### A.    Defendants' Motion

#### 1.    Protected Conduct

The first element Plaintiff must establish is that he engaged in protected conduct. It is well established that an inmate has a First Amendment right to file nonfrivolous grievances against prison officials. *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (citing *Smith*, 250 F.3d at 1037, and *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *see also Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (noting that protected conduct "includes a prisoner's undisputed First Amendment right to file grievances against prison officials on his own behalf") (quoting *Herron*, 203 F.3d at 415). It is beyond dispute that Plaintiff engaged in protected conduct by filing the August 16, 2016 grievance regarding his need for law library time. Although Defendants note that Plaintiff's grievance was a "generic grievance" not written against any prison official in particular, including Defendants, and that Plaintiff obtained effective relief through the grievance when Defendant Skipper immediately arranged for Plaintiff to receive extra library time, they concede for purposes of their motion that the grievance constitutes protected conduct.[4] (ECF No. 178 at PageID.1051–52.)

---

[4] In their response to Plaintiff's motion, Defendants argue that "the Court could conclude that this grievance does not provide [sic] foundation of protected conduct by Defendants," because the grievance was not written against either Defendant, and Defendant Skipper's prompt response ensured that Plaintiff obtained relief on his grievance. (ECF No. 182 at PageID.1146.) Even considering these facts, however, the filing of a grievance still constitutes protected conduct for purposes of establishing a retaliation claim and must be accepted as such. That does not mean that these circumstances are irrelevant, but they have no bearing on whether the grievance constituted protected conduct.

Defendants argue that Plaintiff's activity as Warden's Forum representative, including his complaints regarding closure of the law library during the August session, was not protected conduct. They cite *Cromer v. Dominguez*, 103 F. App'x 570 (6th Cir. 2004), an unpublished order in which the Sixth Circuit held that the plaintiff failed to show that he engaged in First Amendment activity as a Warden's Forum representative. *Id.* at 573. The Sixth Circuit reached the same result in another unpublished order, *see Vandiver v. Martin*, 48 F. App'x 517, 520 (6th Cir. 2002) ("Because VanDiver has not established that he was engaging in protected First Amendment activity as a warden's forum representative, his retaliation claim against these three prison officials fails."), as have district courts within the Sixth Circuit, *see Odom v. Hoffner*, No. 1:13-cv-98, 2017 WL 6811704, at *5 (W.D. Mich. Sept. 27, 2017) (stating that "[p]articipation on the Warden's Forum is not activity protected under the First Amendment"); *Griffin v. Klee*, No. 14-cv-14290, 2015 WL 2124998, at *5 (E.D. Mich. May 6, 2015) (noting that "federal courts in both districts of this state have consistently held that participation on the Warden's Forum is not activity protected under the First Amendment"); *Miller v. Berghuis*, No. 1:13-cv-19, 2014 WL 1909348, at *4–5 (W.D. Mich. May 13, 2014) (concluding that because Warden's Forum representatives merely function as an advisory board, their participation as representatives does not amount to protected conduct); *Moore v. Michigan Dep't of Corrs.*, No. 1:07-CV-756, 2009 WL 2170369, at *3 (W.D. Mich. July 21, 2009) ("Even if plaintiff had raised an [issue] at the warden's forum, he was not engaging in protected First Amendment activity when appearing as a representative to the forum." (citing *Cromer*, 103 F. App'x at 573)). Plaintiff counters that in *King v. Zamiara*, 680 F.3d 686 (6th Cir. 2012), the Sixth Circuit held that the plaintiff's Warden's Forum activity constituted protected conduct.

10

More recently, in *Berkshire v. Dahl*, 928 F.3d 520 (6th Cir. 2019), the Sixth Circuit synthesized its decisions regarding Warden's Forum activity. First, the *Berkshire* court noted that in the "first iteration of *King v. Zamiara* ('*King I*')," 150 F. App'x 485 (6th Cir. 2005), the court held that the plaintiff's assistance to other inmates in his role as Warden's Forum representative was protected conduct because the plaintiff presented evidence that other inmates required his assistance in order to access the courts. That evidence showed "that other inmates were either illiterate in English or 'uneducated in the law and that they would have been unable to seek effective redress without [the plaintiff's] help.'" *Id.* at 531 (quoting *King*, 150 F. App'x at 492–93); *see Evans v. Vinson*, 427 F. App'x 437, 445–46 (6th Cir. 2011) (holding that a plaintiff who assisted another prisoner in filing a grievance may establish that he engaged in protected conduct by showing that the assisted prisoner "needed assistance and had no reasonable alternative but to seek that assistance from another prisoner"). The *Berkshire* court held that under *King I*, the plaintiff showed that other inmates needed assistance because he testified that prison officials directed other prisoners to him to seek help with their complaints and that the prisoners he helped had severe mental illness, could not read or write, or were too medicated to write anything down. *Id.* The court distinguished *Cromer* and *VanDiver* on the basis that the plaintiffs in those cases failed to demonstrate that other prisoners required their assistance to pursue legal redress. Thus, "[t]aken together, the *Cromer* and *VanDiver* plaintiffs' First Amendment claims failed *not* because Warden's Forum-related activity is not protected per se; rather, the plaintiffs' claims failed because they had not shown that other inmates (whom the plaintiffs assisted) had no other reasonable alternatives for assistance." *Id.* at 533. The instant case is more like *Cromer* and *VanDiver* than *Berkshire* or *King* because Plaintiff merely asserts that his complaints at the August Warden's Forum session were protected conduct, without providing any evidence that the prisoners Plaintiff

sought to represent could not have pursued legal redress on their own without Plaintiff's assistance. *See Cromer*, 103 F. App'x at 573 ("Cromer has not demonstrated that the inmates he represented on the warden's forum could not have been represented by another inmate, or that they could not bring any concerns they may have to the attention of prison officials without Cromer's assistance."). Accordingly, Plaintiff fails to demonstrate that his activity at the August Warden's Forum session constituted protected conduct.

### 2.    Adverse Action

An action is adverse if it would deter a person of ordinary firmness from engaging in that conduct. *See Thaddeus-X*, 175 F.3d at 394. Defendants contend that the actions Plaintiff alleges— removal from the Warden's Forum, transfer from RMI to SLF, loss of his prison job, and deprivation/delay of his personal property—are legally insufficient to constitute adverse action for purposes of a retaliation claim. But Defendants misinterpret Plaintiff's allegations. The only two adverse actions Plaintiff asserts are his transfer and the approximately two-week deprivation of his property. Plaintiff alleges that the loss of his prison job occurred because of the transfer, not as a separate adverse action.[5]  As for removal from the Warden's Forum, Plaintiff mentions it as a fact, but does not allege it as an adverse action. (ECF No. 110 at PageID.476–81.) In any event, a claim based on removal from the Warden's Forum would fail had Plaintiff alleged it. *See Griffin v. Berghuis*, 563 F. App'x 411, 420 (6th Cir. 2014) ("We have not been directed to any case holding that participation in a Warden's Forum is so valuable to a prisoner that its denial reasonably would deter the prisoner from engaging in protected conduct.").

---

[5] To the extent Defendants contend that being removed or fired from a prison job cannot amount to an adverse action, they are incorrect. *See, e.g., Moore v. Fales*, No. 1:18-cv-1237, 2019 WL 667886, at *3 (W.D. Mich. Feb. 19, 2019) (collecting cases).

### a.    Transfer to SLF

It is well recognized that, in general, a transfer from one prison facility to another is not considered adverse. *See LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (citing *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003)) ("As a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse."). "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005); *see also Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) ("[A] prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification."). However, the Sixth Circuit has recognized that a transfer may amount to an adverse action in a limited set of circumstances. For example, if it is foreseeable that the transfer would inhibit or restrict the prisoner's ability to access the courts, then such a transfer could be considered an adverse action that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an adverse action because it resulted in the plaintiff losing his high-paying prison job that paid for his lawyer fees and moved him further away from the attorney).

Defendants contend that Plaintiff's transfer to SLF was not an adverse action because it was nothing more than a routine transfer in the ordinary course of prison business. (ECF No. 178 at PageID.1054–55.) But this argument ignores Plaintiff's allegations that the transfer resulted in his loss of his high paying job, which he needed "to pay for legal assistance from more advanced prisoner pro se litigants" and to pay for legal materials (paper, pens, printed copies of cases, etc.) that were necessary to litigate his two state-court criminal matters. (ECF No. 110 at PageID.477–78.) Defendants ignore the Court's September 12, 2019 Order finding that these alleged

consequences were similar to those at issue in *Siggers-El*, which affected the plaintiff's ability to access the courts. (ECF No. 8 at PageID.71.) They also fail to explain why these allegations, supported by Plaintiff's verified complaint, sufficed to allow the Court to determine that Plaintiff stated a retaliation claim but are insufficient for purposes of summary judgment. Nonetheless, even if a plaintiff can articulate negative or adverse consequences inhibiting his ability to access the courts, he must still show that the consequences were foreseeable. *Id.* at 702. Foreseeability focuses on the defendant's knowledge. *See Smith v. Weers*, No. 17-1504, 2018 WL 2087122, at *4 (6th Cir. Jan. 2, 2018) ("The question still remains whether Warden Hoffner could reasonably foresee the dismissal of Smith's state-court lawsuit as a consequence of his transfer."); *Miller v. Berghuis*, No. 1:13-cv-19, 2014 WL 1909348, at *5 (W.D. Mich. May 13, 2014) (finding summary judgment proper because, among other reasons, "Miller has not alleged any facts that allow the inference that Defendants knew or would have known about the circumstances which Miller claims made the transfer adverse"). Here, nothing in Plaintiff's Second Amended Verified Complaint or his exhibits, including the numerous affidavits from other prisoners he submits, suggests that Defendants were aware of any fact from which they could have foreseen the negative consequences Plaintiff alleges as a result of the transfer. In other words, Plaintiff presents no admissible evidence showing that Defendants were aware that he was using his funds from his job to fund his litigation expenses (or to make phone calls to an attorney in order to obtain legal advice, as he now alleges). Accordingly, Plaintiff fails to demonstrate the foreseeability required to render his transfer an adverse action.

### b.    Deprivation of Hygiene Items, Legal Materials, Medicine, Etc.

Defendants contend that a prisoner's inability to access his personal property, such as soap, shampoo, toothpaste, and other hygiene items, for less than two weeks does not amount to an

adverse action. They further note that they were not involved with property transfers at RMI and did not prevent Plaintiff from obtaining hygiene items or seeing a nurse for temporary medications when he arrived at SLF. Whether Defendants were involved with property transfers at RMI is more appropriately considered under the causal connection prong of the retaliation claim.

The adverse action at issue is delaying the transfer of Plaintiff's property "for nearly two weeks," which, according to Plaintiff, resulted in the deprivation of his hygiene items, legal materials, acid reflux medication, postage and his Bible and other religious material. (ECF No. 110 at PageID.479–80.) Regarding his hygiene items, Plaintiff alleges that after he arrived at SLF, he requested "in the least" hygiene products but was told that he did not qualify for an indigent loan. Because his prison funds did not transfer until September 27, 2016, he was unable to purchase hygiene products until then. (*Id.* at PageID.479.) Plaintiff further claims that, because he lacked his legal materials, he was forced to file a motion for relief for judgment that omitted important facts. (*Id.* at PageID.480.) Finally, regarding his medication, Plaintiff alleges that he was told that he would have to wait until he received his property to obtain his medication. (*Id.*)

"Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 398–99). However, an action will not be considered adverse if it is de minimis or inconsequential. *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018). Here, Plaintiff alleges several consequences that render the delay of his property more than inconsequential. For example, the Sixth Circuit has indicated that deprivation of hygiene items— here, for almost two weeks—could be sufficiently adverse for a retaliation claim. *See Bell*, 308 F.3d 604 (citing *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996) (noting that a defendant's refusal to provide hygiene items could support a retaliation claim)); *Rodgers v. Hawley*, 14 F.

App'x 403, 410 (6th Cir. 2001) (finding that the plaintiff's claim that the defendants arranged to deprive him of an indigent store order for postage stamps, hygiene items, and over-the-counter medication was adverse action). In addition, the Court previously determined that Plaintiff's allegations regarding his lack of access to his legal records and medication demonstrated that the deprivation was sufficiently severe to allow the claim to proceed. (ECF No. 8 at PageID.71–72.) *See Campbell v. Gause*, No. 10-11371, 2017 WL 1080925, at *5 (E.D. Mich. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 1058845 (E.D. Mich. Mar. 21, 2017) (concluding that confiscation of the plaintiff's prescribed medicine in connection with his transfer constituted adverse action). Defendants do not adequately address these points.

### 3.    Causal Connection

To establish the final element of his claim, Plaintiff must show that his protected conduct was a substantial or motivating factor for Defendants' alleged retaliatory conduct. *Brown v. Crowley*, 312 F.3d 782, 787 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 399). To establish this element, a plaintiff must present more than "conclusory allegations of retaliatory motive 'unsupported by material facts.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). "Motive is often very difficult to prove with direct evidence in retaliation cases. Circumstantial evidence may therefore acceptably be the only means of establishing the connection between a defendant's actions and the plaintiff's protected conduct." *King*, 680 F.3d at 695. Such evidence "can include the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action." *Hill*, 630 F.3d at 475–76.

Plaintiff's burden of demonstrating a causal connection is complicated by his claim that Defendants retaliated against him for filing his grievance *and* his Warden's Forum activity. As set forth above, the latter activity was not protected conduct. Therefore, Plaintiff's complaints at the

Warden's Forum, his activities undertaken in his role as Block Representative, Defendant Skipper's comment telling him not to return, and the prisoner affidavits he offers concerning Warden's Forum activities and transfers (ECF No. 172-1 at PageID.970–71, 976–77), provide no basis for a retaliation claim. The question, therefore, is whether Plaintiff has presented sufficient evidence to show that his grievance, as opposed to his Warden's Forum activities, motivated the adverse action.

Defendants contend that the fact that Plaintiff's grievance was not against either of them cuts against a causal connection. (ECF No. 178 at PageID.1059.) Plaintiff responds that his grievance was obviously directed to them, even though he did not mention them by name, as they were the only MDOC officials with authority to lock down the prison and the law library. (ECF No. 179 at PageID.1110.) Whether a grievance is written against a particular defendant is not necessarily determinative of a retaliation claim. *See Shoults v. White*, No. 5:17-CV-150, 2018 WL 4761659, at *3 (W.D. Ky. Oct. 2, 2018) (noting that "[i]t is not necessary to be named in a lawsuit or grievance to satisfy the retaliatory motive requirement" because a plaintiff need only show that the defendant engaged in an adverse action that was motivated by the protected conduct). More relevant to the causal connection inquiry here is that Defendant Skipper immediately arranged for Plaintiff to receive law library time, effectively granting him all the relief he could have obtained. This fact suggests a lack of animus toward Plaintiff's protected conduct, although it does not conclusively negate a causal connection.

The one-month interval between Plaintiff's grievance, filed on August 16, 2016, and his September 16 transfer is some evidence of a causal connection. *See Campbell*, 2017 WL 1080925, at *5 ("Plaintiff's April 9, 2007 grievance against Powell, Gause, and Dye, and the April 24 transfer implies a causal connection."). Plaintiff also cites evidence in his Verified Second

Amended Complaint that could support a causal connection. That is, he alleges that a few days after the Warden's forum, ARUS Smith told him that "'Palmer' and 'Skipper' are beginning to complain about you, and if you can't stop it with the grievance and let us run this facility how we see fit, you're gonna be put on a bus." (ECF No. 110 at PageID.477.) While this evidence *could* bolster a finding of a causal connection, Plaintiff's testimony about ARUS Smith's statement is hearsay and, therefore, inadmissible.[6] It is well established in the Sixth Circuit that a court may not consider hearsay when deciding a motion for summary judgment. *See Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012) (citing *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007)) ("[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded.") (internal citations omitted); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) ("Hearsay evidence may not be considered on summary judgment.").

In the end, Plaintiff must hang his hat on temporal proximity. But the Sixth Circuit has been reluctant to find that temporal proximity between protected conduct and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill*, 630 F.3d at 476; *see also Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) ("Substantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone."). Moreover, any inference arising from temporal proximity is significantly muted by the facts that Defendant Skipper granted Plaintiff full relief on his grievance and, by Plaintiff's own admission, Defendant Skipper interpreted Plaintiff's complaints at the August Warden's Forum session as inciting prisoners to file grievances. (ECF No. 110 at PageID.476–

---

[6] A verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

77.) Plaintiff's evidence thus indicates that, if Defendant Skipper was animated at all by Plaintiff's conduct, it was because of Plaintiff's non-protected conduct as a Block Representative.

Defendants also point out that Plaintiff fails to present any evidence showing that Defendant Palmer was involved in Plaintiff's transfer, and both Defendants note that they were not involved with property transfers. (ECF No. 178 at PageID.1056 (citing ECF No. 153-4 at PageID.726, 750), 1059.) Plaintiff fails to rebut these assertions with admissible evidence. While Plaintiff's allegation that SLF Property Room Officer Shaw told him that the "higher ups" at RMI instructed RMI's property room to hold Plaintiff's property initially sufficed to state a claim, as discussed above regarding ARUS Smith's statement, it cannot be considered on summary judgment because it is inadmissible hearsay.

Finally, Plaintiff argues that his evidence shows irregularities in the transfer, such as that it was uncommon for non-emergency transfers to occur on Fridays and that Plaintiff was the only prisoner transferred for a non-emergency reason. He also points to a discrepancy between the proffered reason for his transfer to SLF—to make bed space at RMI—and the 24-Hour Report that Defendants produced (ECF No. 151-3), which shows that no prisoner was moved into his cell at RMI the day he transferred to SLJ. While this evidence might be relevant to rebut Defendants' proffered reason for the transfer if Plaintiff could establish a causal connection, it is immaterial to the issue of a causal connection, *i.e.*, to show that his grievance motivated the transfer. Thus, such evidence does not save Plaintiff's claim from summary judgment.

### 4.    Official Capacity Claims

Defendants also move for the dismissal of Plaintiff's official capacity claims and his requests for declaratory and injunctive relief (which also include relief on behalf of other prisoners). Plaintiff has failed to respond to this argument, thereby waiving any argument he may have on these issues. *See Gomery v. Continental Cas. Co.*, No. 1:13-cv-947, 2014 WL 4209648,

at *4 (W.D. Mich. Aug. 25, 2014). Accordingly, should the Court reject all or any portion of this Report and Recommendation, I recommend that the Court nonetheless dismiss Plaintiff's official capacity claims and requests for injunctive and declaratory relief.

### B.    Plaintiff's Motion

As noted, Plaintiff has filed his own motion for summary judgment. For the reasons set forth above, I recommend that his motion be denied as he fails to establish the requisite elements of a prima facie case of retaliation. Should the Court disagree with the above analysis and allow the case to proceed, I nonetheless recommend that it deny Plaintiff's motion.

Because Plaintiff has the burden of proof on his retaliation claim, he must show "that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. He has not met this burden because the evidence he has submitted does not constitute evidence that no reasonable jury would be free to disbelieve.

Accordingly, Plaintiff has not met his burden on summary judgment.

### IV.    Conclusion

For the reasons set forth above, I recommend that the Court **deny** Plaintiff's Motion for Summary Judgment (ECF No. 171), **grant** Defendants' motion for summary judgment (ECF No. 177), and dismiss Plaintiff's Second Amended Verified Complaint (ECF No. 110) **with prejudice**.

Dated: December 22, 2021         /s/ Sally J. Berens
                                               SALLY J. BERENS
                                               U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).